# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**JULIO A. VASQUEZ**

v.                                                              C.A. No. 10-214 S

**NANCY BAILEY, et al.**

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

    Plaintiff, Julio A. Vasquez, *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint (the "Complaint" or "Cmpt.") pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging mistreatment by fifteen ACI administrators and employees ("Defendants") (Docket # 1). Plaintiff was granted leave to proceed *in forma pauperis* in this action (Docket # 4). Accordingly, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A ("§ 1915(e)(2)" and "§ 1915A", respectively), I have screened the Complaint. As discussed below, having found that certain claims in the Complaint fail to state claims upon which relief may be granted, I have prepared this Report and Recommendation recommending dismissal of the same.

## BACKGROUND

    The following background alleged in the Complaint is assumed to be true for purposes of this screening.

### I.    Letters to Administrators

    At some point prior to March 4, 2010, Plaintiff wrote letters to Rhode Island Department of Corrections ("RIDOC") Assistant Director Nancy Bailey, Warden James Weeden, and RIDOC Associate Director Joseph DiNitto stating that he was in fear for his life. Plaintiff explained that correctional officers were telling inmates fabricated stories that Plaintiff was a pedofile and a "rat". Cmpt. at ¶ 1. Plaintiff requested an out-of-state transfer, but he received no response to his letters.

### II.    Force Used on March 4, 2010

    On March 4, 2010, Correctional Officer ("C/O") LeDuc escorted Plaintiff, who was in handcuffs and shackles, to a discipline board hearing. Plaintiff asked C/O LeDuc why correctional officers liked to beat inmates while they were in handcuffs and told C/O LeDuc that correctional officers were "punks". Cmpt. at ¶ 3. C/O Trindade heard Plaintiff and told him to "shut up". *Id.* Plaintiff responded to C/O Trindade with profanity. C/O Trindade then grabbed

1

Plaintiff by the back of his shirt and, after bringing Plaintiff back to his cell, C/Os Trindade and LeDuc threw Plaintiff against the wall. C/O Trindade then punched Plaintiff in the mouth while C/O LeDuc punched Plaintiff in the ribs. C/O Manning ran over, grabbed Plaintiff's groin and brought him to the ground. C/O Trindade then called a "code blue". Lieutenant William Galligan came over and, although Plaintiff was handcuffed on the ground and C/O Trindade told Lieutenant Galligan that Plaintiff was calm, Lieutenant Galligan sprayed Plaintiff in the face, mouth, and inside Plaintiff's pants. Lieutenant Galligan then told C/Os LeDuc and Trindade as well as C/Os Duarte and Dennatte to "jump" Plaintiff. *Id.* at ¶ 7. They beat Plaintiff while escorting him to the nurse and then threw Plaintiff on the ground in front of Nurse Dick.

Nurse Dick did not say anything to the correctional officers. Instead, Nurse Dick instructed Plaintiff to get up even though Plaintiff was handcuffed and shackled. Plaintiff was then brought back to his cell and left in handcuffs for ten to fifteen minutes.

Plaintiff was then escorted by C/Os North, LeDuc, and Simpson to the Intake Service Center for an x-ray. After the x-ray, C/O Simpson slapped Plaintiff's hand and forced Plaintiff to put his shirt on even though C/O Simpson knew Plaintiff's arm was in pain.

Plaintiff then asked Nurse Dale Fogarty to place him in a monitored cell behind the hospital because he feared that the correctional officers would hurt him or that he would kill himself. Nurse Dale did not comply with Plaintiff's request.

While escorting Plaintiff back from his x-ray, C/O Simpson slapped Plaintiff's head and squeezed Plaintiff's injured finger. In the car, C/O Simpson sprayed Plaintiff with pepper spray, and slapped Plaintiff in the head C/O North did not tell C/Os Simpson and LeDuc to stop assaulting Plaintiff.

### III. Denial of Single Recreation

At some point, for Plaintiff's protection, Investigator Cabral placed Plaintiff on "single recreation" (i.e. requiring that the prisoner be isolated, with no other inmate placed in the same area, during recreation). Later, Investigator William Bogones took Plaintiff off single recreation, and, despite Plaintiff's objections, placed Plaintiff in a cage with another inmate during recreation. Plaintiff was thereafter assaulted by the other inmate. Plaintiff told Investigator Bogones that he wanted to press charges against the inmate, but instead of assisting Plaintiff, Investigator Bogones threatened Plaintiff not to get him in trouble. Plaintiff then got nervous (and presumably did not press charges).

### IV. Grievance Forms and Letters

On May 4, 2010, C/O Douglas entered Plaintiff's cell while Plaintiff was showering and took a grievance form on which Plaintiff had been working and which named C/O Douglas. C/O Douglas also "broke some letters that [P]laintiff had." Cmpt. at ¶ 16.

## DISCUSSION

### I. Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis*, § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action, *inter alia*, fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, § 1915A directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss the complaint, or any portion thereof, for reasons identical to those set forth in § 1915(e)(2). 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) and § 1915A mirrors the legal standard used when ruling on a Rule 12(b)(6) motion. *See Pelumi v. Landry*, No. 08-107, 2008 WL 2660968, at *2 (D.R.I., June 30, 2008). In determining whether allegations state a claim on which relief my be granted, the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A claim fails to state a claim for which relief may be granted if the factual allegations fail to "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *see also Iqbal*, 129 S.Ct. at 1949-1951 (discussing the plausibility requirement); Fed.R.Civ.P. 8(a)(2).

### II. Legal Standard Under § 1983

In order to maintain a § 1983 action, the conduct complained of must have (1) been committed by a person acting under color of state law and (2) deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Here, although Defendants were acting under state law, Plaintiff's claims are reviewed to determine if they allege facts indicating that Defendants deprived him of a constitutional or federal statutory right. As discussed below, upon such review, I have

determined that the Complaint states viable Eighth Amendment claims against nine Defendants while the remaining allegations fail to state claims on which relief may be granted.

### III. Review of Claims
#### A. Viable Claims
##### 1. Eighth Amendment Excessive Force

The Eighth Amendment prohibits "cruel and unusual punishments." To state an Eighth Amendment claim for the use of excessive force, an inmate must demonstrate "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986) (citations omitted). The primary inquiry in determining whether a prison official used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995 (1992)(citations omitted).

Here, Plaintiff alleges that, on March 4, 2010, (i) C/O LeDuc threw Plaintiff against the wall, punched him in the ribs, and beat him; (ii) C/O Trindade threw Plaintiff against the wall, punched him in the face, and beat him; (iii) C/O Manning grabbed Plaintiff's groin, forced him to the ground, and beat him; (iv) Lieutenant Galligan sprayed Plaintiff in the face, mouth and inside his pants and told officers to "jump" Plaintiff; (v) C/Os Duarte and Dennatte beat Plaintiff while escorting him to the nurse; and (vi) C/O Simpson slapped Plaintiff's hand and head, squeezed his injured finger, and sprayed Plaintiff. Plaintiff alleges that he was handcuffed and shackled at the time of these alleged attacks. Thus, at this stage, Plaintiff has stated a claim of excessive force against C/Os LeDuc, Trindade, Manning, Duarte, Dennatte, and Simpson as well as Lieutenant Galligan.

##### 2. Eighth Amendment Duty to Intervene Against North

Additionally, "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990)(dicta regarding assault by officer on arrestee); *see also, e.g., Smith v. Mensinger*, 293 F.3d 641, 650-52 (3d Cir. 2002) )("[I]f [prisoner] can show at trial that an officer attacked him while [defendant correctional officer] ignored a realistic opportunity to intervene, [prisoner] can recover"). Here, Plaintiff alleges that C/O North was in the car while C/O Simpson slapped Plaintiff and sprayed him with pepper spray, but failed to take reasonable steps

4

to stop the allegedly excessive assault. Accordingly, Plaintiff has stated an Eighth Amendment claim at this stage against C/O North.

### 3. Eighth Amendment Failure to Protect Claims Against Bogones

An inmate who is attacked by a fellow inmate may state an Eighth Amendment claim against a prison official for failing to afford adequate protection if the inmate shows that (i) he suffered an objectively serious deprivation and (ii) the defendant knew of and disregarded a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 828-840, 114 S.Ct. 1970 (1994). Here, Plaintiff alleges that Investigator Bogones placed him in a cage with another inmate who assaulted him. Plaintiff further alleges that Investigator Bogones was aware of the risk both because Investigator Cabral had placed Plaintiff on single recreation and because Plaintiff had objected to being placed in a cage with another inmate. Accordingly, at this stage, Plaintiff has stated an Eighth Amendment failure to protect claim against Investigator Bogones.

## B. Claims That Fail to State Claims on Which Relief May Be Granted

### 1. Failure to Protect Claims Against Bailey, Weeden, and DiNitto

Plaintiff also alleges that he wrote letters to RIDOC Assistant Director Bailey, Warden Weeden, and RIDOC Associate Director DiNitto stating that he was in fear for his life because correctional officers were telling inmates that Plaintiff was a pedofile and a "rat", but he received no response to his letters. Presumably Plaintiff seeks to hold these defendants liable under the Eighth Amendment for a failure to protect him. However, although Plaintiff alleges that he was assaulted by officers on March 4, 2010 and by an inmate during recreation, the Complaint suggests no connection between the allegations in the letters and the assaults.

Further, to the extent Plaintiff seeks to find these Defendants liable as supervisors, only direct, not vicarious, liability is available in a § 1983 action,. *See Aponte Matos v. Toledo Davila*, 135 F.3d 182, 192 (1st Cir. 1998). At a minimum, a plaintiff must plead facts indicating an "'affirmative link' between the behavior of the subordinate and the action or inaction of his supervisor ... such that 'the supervisor's conduct led inexorably to the constitutional violation.'" *Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir. 2009)(citations omitted); *see also Iqbal*, 129 S.C.t at 1949 (suggesting "purpose rather than knowledge" needed for supervisory liability in a § 1983 action). Here, the Complaint alleges only that Defendants Bailey, Weeden, and DiNitto, did not respond to Plaintiff's letters and refused to transfer him out of state. Such allegations fall short of alleging the affirmative link to the assaults necessary to state a claim. Therefore, I recommend the claims against Defendants Bailey, Weeden, and DiNitto be DISMISSED.

### 2. Failure to Intervene/Provide Adequate Medical Care Claims against Nurses Dick and Dale

Additionally, the Complaint alleges (i) Nurse Dick did not say anything to the officers who threw Plaintiff down and then asked Plaintiff to get up despite the fact that he was shackled and (ii) Nurse Dale refused to place Plaintiff in a monitored cell despite Plaintiff's statement that he feared attack by the officers and was suicidal. Although the basis for Plaintiff's claims against the nurses is not clear, he is presumably claiming that the nurses either failed to act to prevent the alleged assault on Plaintiff by the correctional officers or did not provide him with adequate medical care. Neither theory, however, is cognizable.

First, neither nurse witnessed any excessive force imposed on Plaintiff by any correctional officer or acted with disregard to an immediate substantial risk of serious harm to Plaintiff. Nor has Plaintiff established that the nurses have the same duty to intervene to stop attacks by correctional officers as imposed on fellow correctional officers. *See Parker v. Robinson*, No. 04-214, 2007 WL 2908813, at *2 (D.Me. Sept. 26, 2007)(discussing duty on correctional officers to intervene)(citing *Mensinger*, 293 F.3d at 650-52). Further, although the Eighth Amendment prohibits prison officials from "deliberate indifference" to an inmate's serious medical needs, *see Farmer*, 511 U.S. at 834, here, the Complaint fails to establish that Plaintiff suffered from a serious medical need or that the nurses acted with deliberate indifference to any such medical need. Therefore, the allegations against Nurses Dick and Dale fall short of stating constitutional claims, and I recommend the claims against them be DISMISSED.

### 3. Grievances Forms and Letters

Plaintiff's claims that C/O Douglas confiscated an inmate grievance form and tampered with letters in his cell also fail to state claims on which relief may be granted. Although prisoners have a constitutional right under the First and Fourteenth Amendments to access to the courts, *see Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174 (1996), Plaintiff does not have a constitutional right to access to grievance forms, *see Smith v. Shivers*, No. 09-1027, 2009 WL 3379925, at * 2 (W.D.La. Oct. 16, 2009)(reviewing cases); *Mitchell v. Liberty*, No. 08-341, 2009 WL 33435, at * 5 (D.Me. Jan. 05, 2009). Here, Plaintiff does not claim that the confiscation of the grievance form impeded his access to the courts.

Further, "[w]hile the loss or interruption of the [P]laintiff's mail may be frustrating, it fails to rise to level of a Constitutional violation." *Bartolomeo v. Liburdi*, No. 97-624, 1999 WL

6

143097, at *3 (D.R.I., Feb. 04, 1999); *see also Davis v. Goord*, 320 F.3d 346, 351 (2$^d$ Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"). Accordingly, I recommend that Plaintiff's claim against Douglas regarding the confiscation of the grievance form and tampering with Plaintiff's mail be DISMISSED.

## CONCLUSION

In summary, I find that the Complaint states the following claims against the following Defendants:

(1) Eighth Amendment excessive force claims against C/Os LeDuc, Trindade, Manning, Duarte, Dennatte, and Simpson and Lieutenant Galligan;

(2) Eighth Amendment failure to intervene claims against C/O North; and

(3) Eighth Amendment failure to protect claims against Investigator Bogones.

However, I find that the following claims fail to state claims on which relief may be granted and recommend that such claims be DISMISSED:

(i) Eighth Amendment failure to protect claims against Defendants Bailey, Weeden, and DiNitto;

(ii) Eighth Amendment failure to intervene and failure to provide adequate medical care claims against Nurse Dick and Nurse Dale; and

(iii) First and Fourteenth Amendment claims regarding confiscation of grievance form and mail tampering against C/O Douglas.

Accordingly, I further recommend that Defendants Bailey, Weeden, DiNitto, Dick, Dale, and Douglas be DISMISSED as defendants in this action.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
June 15, 2010